20 N.J. Super. 471 (1952)
90 A.2d 98
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE JANIEC, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 2, 1952.
Decided June 30, 1952.
*474 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. George A. Gray for the plaintiff-respondent (Mr. J. Victor Carton, Monmouth County Prosecutor, attorney).
Mr. Lawrence Janiec, Jr., pro se.
The opinion of the court was delivered by FRANCIS, J.C.C.
The indictment, No. 4221, with which we are concerned here, was returned against the defendant, Janiec, by the September, 1946 term of the Monmouth County grand jury. Two counts were contained therein (although not designated as such): the first recited three previous high misdemeanor convictions and charged a fourth high misdemeanor, namely, breaking and entering a dwelling house in the Borough of Deal, Monmouth County, New Jersey, on September 19, 1945, with intent to steal the goods and chattels of one Loretta Corbally; the second count charged him with another high misdemeanor, that is, grand larceny of certain personal property of Loretta Corbally.
This was one of several indictments which had been brought against him in Monmouth County. He was tried and convicted on three of them; then, as a fourth offender, he was sentenced to life imprisonment under the Habitual Criminals Act (R.S. 2:103-10, as amended L. 1940, c. 219, p. 889, sec. 3). The sentence was reversed because he had not been tried and convicted under an indictment charging him specifically with the three previous high misdemeanor convictions, *475 State v. Janiec, 9 N.J. Super. 29 (App. Div. 1950), affirmed 6 N.J. 608 (1951), cert. denied 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951), and the record was remanded for the imposition of a proper sentence.
Following one of the convictions Janiec was indicted again. This indictment, No. 4234, set forth four previous high misdemeanor convictions, the three already referred to in No. 4221, and the more recent one for robbery, and then charged as the principal offense the same grand larceny as is the subject of 4221. No. 4234 was described by the State in State v. Janiec, supra, as a "superseding" indictment.
Trial of No. 4221 resulted in a verdict of guilty of grand larceny, guilty of having been convicted previously of three high misdemeanors, and a disagreement on the charge of breaking and entering. On the basis of this result, the trial court again imposed a sentence of life imprisonment and Janiec appeals.
The argument is advanced that since, in the earlier appeal, the State described the indictment here as having been "superseded," no prosecution could be had under it. The assistant prosecutor who employed the term was called as a defense witness at the trial and he explained that by it he had not intended to indicate an abandonment or a nolle prosequi of the charge; he pointed out that both indictments, i.e., 4221 and 4234, were open of record. It is not claimed on this appeal, nor was it argued at the trial, that any formal abandonment, dismissal or nolle prosequi had been recorded. Appellant's position seems to be that the reference to No. 4221 as "superseded" by No. 4234, coupled with the fact that 4234 likewise accuses him with being an habitual criminal as well as charging him with one of the principal offenses covered by No. 4221, accomplishes a vitiation of No. 4221. The contention is not tenable. The general and controlling rule on the subject is:
"Where not provided otherwise by a valid and applicable statute, successive indictments may be found for the same offense; and each indictment is valid, pending and the proper basis of a prosecution *476 where it has not been disposed of by dismissal, quashal, sustaining of a demurrer, or nolle prosequi, and jeopardy has not attached under another of the indictments." (42 C.J.S. p. 888, sec. 34; U.S. v. Strewl, 99 F.2d 474 (C.C.A. 2 1938), cert. den. 83 L.Ed. 1039, 306 U.S. 638, 59 S.Ct. 489 (1939); U.S. v. Neverson, 1 Mackey 152, 12 D.C. 152 (D.C. Sup. Ct. 1880).
Appellant contends that the life sentence was imposed erroneously. As indicated, the allegations respecting the three prior convictions of high misdemeanors appear in the first paragraph of the indictment which charges the offense of breaking and entering. He maintains therefore that he was charged as an habitual offender under this count alone; consequently, when the jury disagreed as to his guilt of breaking and entering, the verdict of guilty of grand larceny on the second count did not justify a sentence under the Habitual Criminals Act. Basically the reason for the reference to previous convictions in the indictment is to give notice to the defendant of the intention of the State to try him as a recidivist for the new or principal offense or offenses charged in the indictment and, upon conviction, to seek a sentence under the Habitual Criminals Act. State v. Lutz, 135 N.J.L. 603 (Sup. Ct. 1947). Whatever our individual opinions may be as to the fundamental fairness of proving three prior convictions (Cf. State v. Ferrone, 96 Conn. 160, 113 A. 452 (Sup. Ct. Err. 1921)) in a trial fraught with such serious consequences to the defendant, the matter is settled by State v. Lutz, supra. And under N.J.S. 2A:85-13, which became effective January 1, 1952, a new procedure has now been created for the sentencing of repeated offenders, such procedure to be instituted after the fourth conviction and before sentence.
While it may have been better practice, where two principal offenses are set out in an indictment, to allege the three previous convictions in a separate count or to repeat the allegation in each count, the fact remains that by the recitals in the indictment he was apprised of the effort to be made by the State to seek the more severe penalty upon conviction.
*477 At the trial the State undertook to prove the three prior convictions and the defendant, who was represented by competent court-appointed counsel, had the opportunity of challenging the proof, and his identity, as the person who had been so convicted. In the main charge the court instructed the jury that in order for the defendant to be convicted as an habitual criminal the State was obliged to prove beyond a reasonable doubt: (1) that the defendant had been convicted previously of three high misdemeanors, and (2) his guilt of breaking and entering or of grand larceny or of both offenses. However, after the jury had been deliberating for a while, they made an inquiry of the court as to whether they could bring in a separate verdict on the breaking and entering and larceny accusations. In answering the question the court said:
"I have charged you that breaking and entering is a high misdemeanor, and likewise is grand larceny. A conviction of either one of these counts will automatically, under the indictment, find him to be an habitual criminal, they all being high misdemeanors." (Italics ours.)
The effect of the word "automatically" removed, or at least it was susceptible of the interpretation in the minds of the jury that the court was removing, from their consideration the burden on the part of the State to prove beyond a reasonable doubt that the defendant had been convicted previously of three high misdemeanors; they might conclude reasonably from this statement that if they found his guilt of either of the principal offenses, without more they should find him to be an habitual criminal. This was inconsistent with the previous instruction that: "Before the defendant can be declared a habitual criminal the jury must be satisfied beyond a reasonable doubt that this defendant was not only convicted of three previous high misdemeanors but that he is also guilty of either the breaking and entering count or the grand larceny count or of both counts as stated in the indictment against the defendant." Where inconsistent statements as *478 to the controlling law upon a vital problem are given, the jury cannot be permitted to speculate as to which is the correct principle nor to exercise their discretion as to which one should be applied. Such a state of the record constitutes error. Brown v. Public Service Ry. Co., 98 N.J.L. 747 (E. & A. 1923); 23 C.J.S., Criminal Law, p. 895, sec. 1307. Although the jury rendered a separate verdict that the defendant was guilty of having been convicted of the three previous crimes, it is impossible to say whether this verdict followed "automatically" upon a finding of guilt of grand larceny or resulted from a separate consideration of this issue and a determination from the evidence that such guilt had been shown beyond a reasonable doubt. The prejudice suffered by the defendant is manifest; conviction of grand larceny as a single offense was punishable at this time by a fine not exceeding $2,000 or by imprisonment for a term not exceeding seven years or both (R.S. 2:103-5); conviction of grand larceny plus a finding of three previous high misdemeanor convictions requires a sentence to life imprisonment.
No objection was made to the supplementary instruction and the error we find therein was not raised as a ground of appeal by the defendant who is acting prose and as an indigent. However, we may "notice plain errors affecting substantial rights of the defendant, although they were not brought to the attention of the trial court." Rule 1:2-19; State v. Bulach, 10 N.J. Super. 107, 115, 76 A.2d 692 (App. Div. 1950).
The Habitual Criminals Act is a highly penal enactment and therefore should be strictly construed and applied. People v. Brophy, 294 N.Y. 540, 63 N.E.2d 95 (Ct. App. 1945); 25 Am. Jur., Habitual Criminals, p. 260, sec. 2; 58 A.L.R. 30: 82 A.L.R. 353; 116 A.L.R. 216. Thus even an incorrigible recidivist should not be subjected to the more severe mandatory punishment unless all of the procedural and substantive requirements created by the statute as well as those which exist in due process are fully met. State v. Lutz, supra, p. 605.
*479 Our view that the supplemental charge to the jury constituted prejudicial error gives rise to the problem as to the effect it should have on the conviction and sentence. Obviously it did not affect the issue of appellant's guilt or innocence of the principal offense of grand larceny; it related only to the determination of whether or not upon conviction thereof he should be sentenced as a fourth offender. Accordingly the verdict finding him guilty of having been convicted previously of three high misdemeanors and the life imprisonment sentence predicated upon such finding are reversed. The record is remanded for reconsideration and redetermination of the matter of sentence.
Our conclusion that the guilty verdict on the charge of grand larceny is not affected by the erroneous charge makes necessary the consideration of two further points raised by appellant. He asserts that the State had lost its right to prosecute him under the indictment because he had not been accorded a speedy trial as required by Article I, par. 8 of the Constitution of 1844, and by Article I, par. 10 of the Constitution of 1947.
The record reveals that the September term, 1946 grand jury returned seven indictments against him. The subject of one, No. 4218, was an alleged robbery and assault and battery committed upon one McKelvey; of another (4219), a robbery of one Carter; a third (4220), charged a jail escape; and a fourth (4221), contained the present charges. For purposes of this discussion it is not necessary to refer to the others.
Indictment No. 4820 was tried on December 3, 1946, and resulted in a verdict of guilty of jail escape; Nos. 4218 and 4219 were tried together on December 3, 1946, and again there were convictions on both of them. On December 11, 1946, the following sentences were imposed: On the robbery count of No. 4218, 12 to 15 years; on No. 4220, 2 to 3 years, both sentences to run consecutively in State Prison; on No. 4219, the other robbery conviction, life imprisonment as a fourth offender, also to run consecutively. Janiec entered *480 upon the service of these sentences and subsequently appealed both from the convictions and the life imprisonment judgment. On July 17, 1950, the Appellate Division reversed the life sentence and ordered the record remanded for proper sentence, but declined to disturb the convictions. Unsuccessful reviews were then sought in our Supreme Court and in the United States Supreme Court (State v. Janiec, supra). On May 11, 1951, the record was finally remitted to the County Court under the mandate of the Appellate Division and on June 6, 1951, a sentence of 14 1/2 to 15 years was substituted for the life term. At this time but three weeks remained before the summer recess. The fall session of the county opened on September 5, 1951, and criminal trials were started on September 17, at which time his trial on this indictment began.
Thus it appears that prior to the taking of the appeal Janiec was in prison for consecutive terms of 2 to 3 years. 12 to 15 years and life as an habitual criminal. There is no credible evidence of any demand that he be brought to trial down to about July 25, 1950, when a notice of motion to dismiss the outstanding indictments, including No. 4221, was given to the prosecutor. Fowler v. Hunter, Warden, 164 F.2d 668 (C.C.A. 10 1947); Shepherd v. U.S., 163 F.2d 974 (C.C.A. 8 1947). Nor is there any evidence of an application to the assignment judge of the county under Rule 2:12-4(b) for an order directing the prosecutor to move the trial of the indictment. In any event, in view of the sentences being served by Janiec during the period in question, his attack upon them in the courts, the infeasibility of trying him on this indictment charging him with being an habitual criminal when he had already been convicted and sentenced as such and was then appealing from the resulting life sentence, and the period of time consumed by the various appeals, in our judgment the delay was not unreasonable and there was no violation of his constitutional right to a speedy trial. Cf. State v. Dilts, 76 N.J.L. 410 (Sup. Ct. 1908).
Appellant also contends that the verdict of guilt of *481 grand larceny is contrary to the weight of the evidence. The core of the argument is that such a finding is so inconsistent with the disagreement as to guilt of breaking and entering it must have been the product of a mistake on the part of the jury. While it is true that Janiec was charged in one count with breaking and entering the Loretta Corbally premises and in the second count with stealing certain personal property belonging to her, the determination of guilt of the larceny is not repugnant to the inability of the jury to agree as to the other charge. It is entirely conceivable that some of the jurors were not satisfied that the State had proved guilt of breaking and entering the premises beyond a reasonable doubt, while all of them were satisfied of his guilt of the larceny. Ample evidence was introduced from which such guilt could have been found. Janiec made oral and written admissions of the Corbally "job" or "burglary"; the police found some of the stolen articles in his room seven days after the theft and returned them to Mrs. Corbally; he undertook to sell one of the stolen rings to one Marie Klebsattel, who said he gave as the reason for offering a woman's ring for sale that he and his wife were "breaking up" and returning each other's gifts. He told the police he had pawned a watch in Philadelphia, which was part of the proceeds of this criminal endeavor. After a search the watch was located in that city and put in evidence at the trial. That it was Mrs. Corbally's property is beyond dispute. She identified it as such; it was a gift from her husband and the case bore the inscription, "With love to Loretta. June 17, 1944." The total of these circumstances justified the guilty verdict. State v. Lax, 71 N.J.L. 386 (Sup. Ct. 1904); State v. Dunlap, 103 N.J.L. 209 (Sup. Ct. 1927).
EASTWOOD, S.J.A.D. (dissenting).
I find myself in disagreement with the ground advanced in the majority opinion for reversal of the judgment of conviction of the defendant as an habitual criminal, to wit: that the supplemental charge of the court stating: "I have charged you *482 that breaking and entering is a high misdemeanor, and likewise is grand larceny. A conviction of either one of these counts will automatically, under the indictment, find him to be an habitual criminal, they all being high misdemeanors"; is inconsistent with the prior charge of the court and, therefore, constituted harmful error. Otherwise, I am in entire accord with Judge FRANCIS' opinion.
My disagreement is based upon the following reasons: (1) that no objection was made to the charge by the defendant; (2) that defendant does not assert it as one of his grounds of appeal; (3) that the evidence adduced at the trial clearly and overwhelmingly established the three prior convictions of the defendant of the high misdemeanors alleged in the indictment, as well as his identity as the person so convicted; and (4) that in light of the entire charge of the court, there was no harmful error in the supplemental charge of the court.
Reasons (1) and (2) will be discussed together. It is undisputed that no objection was made to the charge by the defendant and that the defendant does not assert the alleged erroneous charge as one of his grounds of appeal. Therefore, it is my view that we should not consider the supplemental charge as a ground for reversal. The majority of the court rely upon that part of Rule 1:2-19(a) [4:2-6], reading: "The court may, however, notice plain errors affecting substantial rights of the defendant, although they were not brought to the attention of the trial court," as authority for its consideration of the alleged error. However, it seems to me that the language of Rule 1:2-19(a), immediately preceding the above-quoted part, should be controlling here, viz.: "Error * * * in the charge of the court * * * shall be cause for reversal if specific objection thereto was made and it appears from the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury." The comment in State v. Seaman, infra, is apt, i.e.:
*483 "Assuming, arguendo, that it was erroneous, no objection was made thereto by defendant and he is not entitled to now raise it for the first time on appeal unless it appears that the defendant was prejudiced and suffered manifest injury thereby. Rule 1:2-19, as amended. See State v. Craig, 9 N.J. Super. 18, 25 (App. Div. 1950). We find no such prejudice or injury here."
The following comments of Chief Justice Vanderbilt in Roberts Elec., Inc., v. Foundations & Excavations, Inc., 5 N.J. 426 (1950), are also pertinent:
"* * * Our appellate courts are not bound to consider questions not raised below, even though they be constitutional questions, * * *. In this connection it should be pointed out, moreover, that the defendant has failed to comply with Rule 1:3-2(c): `* * * If the questions involved include any not presented to the court below, this fact shall be noted. The foregoing requirements are to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in or necessarily suggested by the statement of questions involved.'
This is the only rule of court containing such strong language, but the necessity therefor is obvious. It is essential that the appellate courts in studying the briefs know at the outset the questions involved in order to determine what facts in the case are pertinent to the issues raised by counsel. It is especially important to know if any new issues are being raised for the first time in the reviewing court, for ordinarily only matters of jurisdiction or of public policy will be considered for the first time on appeal, State ex rel. Wm. Eckelmann, Inc., v. Jones, supra, at page 379; Anderson v. Modica, 4 N.J. 383, 390 (Sup. Ct. 1950). In some jurisdictions it has been found necessary to dismiss numerous appeals that did not conform to the rule in order to enforce compliance with it, but fortunately we have not found it necessary so to do."
As to my third reason for dissenting, I am unable to find from defendant's brief that he attacks the three prior convictions for high misdemeanors set forth in the indictment under which he was convicted as an habitual criminal. The defendant took the stand in his own behalf, but I am unable to find from an examination of his direct testimony, that he denied the truthfulness of the three prior convictions. He was interrogated with respect thereto by the State on cross-examination and, when an attempt was made to obtain from him a categorical answer as to whether he had or had not *484 been convicted of the three prior high misdemeanors, he contented himself with merely saying, in substance: "I don't remember." But, when questioned as to the crime of breach of prison and escape, he stated: "Well, I remember serving the sentence in State's Prison but I couldn't tell you when it was, sir." And, when he was asked the question: "You didn't remember any of those three convictions?" He replied: "I remember being convicted, but I can't give you dates." The State's evidence as to the three prior convictions overwhelmingly sustains the jury's unanimous verdict of guilty of being an habitual criminal. Under the circumstances, even assuming that the supplemental charge of the court was inconsistent with the court's prior charge, I am persuaded that it cannot be characterized as harmful error and prejudicial to the defendant's substantial rights. Consequently, if the defendant did not suffer manifest wrong or injury thereby, it does not justify a reversal of the judgment of conviction. State v. Seaman, 10 N.J. Super. 439 (App. Div. 1950); certif. den., 6 N.J. 456 (1951).
As to my fourth reason, in reading the entire charge of the court, I do not find that there was such error therein that may be said to have been harmful or prejudicial to the defendant. In determining whether the supplemental charge was inconsistent and, therefore, harmful error, we must carefully consider other parts of the court's charge in relation thereto. For instance, in the court's main charge it stated:
"I charge you that the defendant is presumed to be innocent until he is proved guilty beyond a reasonable doubt by the evidence in the case. The jury is instructed that the charge of breaking and entering and grand larceny alleged to have taken place on September 19, 1945, at the Corbally residence, in its present stage represents an indictment or accusation against this defendant and does not constitute a conviction until he is found to be guilty of the charges beyond a reasonable doubt by the jury. Therefore it is incumbent upon the State to prove independently that the defendant perpetrated the alleged breaking and entering and larceny on September 19, 1945, in the Borough of Deal. Before the defendant can be declared a habitual criminal the jury must be satisfied beyond a reasonable doubt that this defendant was not only convicted of three previous high misdemeanors but that he is also guilty of either the breaking and *485 entering count or the grand larceny count or of both counts as stated in the indictment against the defendant.
The Court instructs you further that the State must establish to your satisfaction and beyond a reasonable doubt the identity of the accused as being the person formerly convicted of the three high misdemeanors in the jurisdictions mentioned in the indictment  namely, the conviction of a high misdemeanor in the City of Paterson, County of Passaic; the conviction of a high misdemeanor in the City of Hackensack, County of Bergen; and a conviction of a high misdemeanor in the City of Trenton, County of Mercer  and that none of these prior convictions have ever been voided, nullified or reversed."
We must also take into consideration the court's statement immediately following the supplemental charge, viz.:
"THE COURT: Now, you must be satisfied beyond a reasonable doubt that this man is either guilty of all the charges in the indictment or any one of them. You may bring in your verdict either collectively, guilty as charged, or guilty of a particular charge, or not guilty.
THE FOREMAN: Yes, sir.
THE COURT: Of any and all charges. Does that answer your inquiry?
THE FOREMAN: Yes, sir.
THE COURT: All right. You may retire."
As was stated in State v. Tansimore, 3 N.J. 516, 525 (1950):
"In determining whether or not error was committed, a single sentence may not be extracted and construed without regard to the context of the entire charge. State v. Banusik, 84 N.J.L. 640, (E. & A. 1906). The court cannot state the law of the case in a single sentence and the charge must be read as a whole in the light of a sensible construction to determine its legal worth. State v. Tachin, 92 N.J.L. 269 (Sup. Ct. 1919), affirmed 93 N.J.L. 485 (E. & A. 1919). Although certain sentences in a charge taken alone may need some amplification to render them accurate, yet if such amplification be given in the context so that the jury cannot be misled, there is no error justifying reversal. State v. Frank, 90 N.J.L. 78 (Sup. Ct. 1917), affirmed 91 N.J.L. 718 (E. & A. 1918). Viewed with these principles in mind, the charge was full, fair, accurate and in accord with the recognized authorities cited many times in murder cases."
I favor an affirmance of the judgment of conviction.